UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUSTIN CARROLL, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-2589** |
| **AMERICAN EMPIRE SURPLUS LINES INSURANCE CO., ET AL** | **SECTION: "H"(5)** |

## ORDER AND REASONS

Before the Court is Defendant Airbnb, Inc.'s Motion for Summary Judgment (Doc. 111). For the following reasons, the Motion is GRANTED.

## BACKGROUND

This action arises from injuries sustained as a result of the collapse of a staircase. Andrew Callard, plaintiff in the now-settled consolidated action, rented a property at 1423 Royal Street in New Orleans, Louisiana ("the Property") from its owners, Defendants Mark Hamilton and Lynn Schwarzhoff (the "Owners"), using the website maintained by Defendant Airbnb, Inc. ("Airbnb").[1] Plaintiff Justin Jude Carroll, a friend of Callard's, also stayed at

---

[1] Doc. 111-2 at 3.

1

the Property during Callard's rental.[2] On April 10, 2015, the wooden stairs that Carroll was ascending to access the Property collapsed, causing Carroll to fall approximately ten feet.[3] Plaintiff Carroll alleges that he sustained severe musculoskeletal and neurological injuries as the result of the fall.[4] Carroll asserts tort claims against Defendants Hamilton and Schwarzhoff, several of their alleged insurers, and Defendant Airbnb.[5] Plaintiff Keren Rosenblum, Carroll's wife, asserts claims for loss of consortium against the same defendants.[6]

Defendant Airbnb now moves for summary judgment dismissing Plaintiffs' claims against it, arguing that under Louisiana law Defendant Airbnb owed no duty to Plaintiffs and that Airbnb had no knowledge of the defect that allegedly caused Plaintiffs' injuries. Plaintiffs oppose.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

In determining whether the movant is entitled to summary judgment,

---

[2] *See* Docs. 1 at 3, 111-2 at 3.
[3] *See* Doc. 1 at 4.
[4] Doc. 1 at 4.
[5] Docs. 1, 44.
[6] Docs. 1, 44.
[7] Fed. R. Civ. P. 56.
[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[9] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[10] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[11] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[12] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[13] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[14]

## **LAW AND ANALYSIS**

Plaintiffs bring negligence claims against Defendant Airbnb, asserting that Airbnb knew or should have known of the defect that caused the stairs to collapse and negligently failed to correct the defect or remove the Property from its listings.[15] Negligence liability in Louisiana flows from Louisiana Civil Code

---

[9] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[10] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[11] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[12] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[13] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[14] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[15] Doc. 44 at 4.

article 2315.[16] Louisiana courts employ a duty-risk approach to negligence claims, requiring a plaintiff to prove that,

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.[17]

Whether the defendant owed the plaintiff a duty is a threshold issue in any negligence action.[18] The existence of a duty, and whether a plaintiff's harm falls within its scope, is a question of law.[19]

Additionally, Louisiana Civil Code articles 2317.1 and 2322 provide that a person who owns or controls a building is liable for harm caused by its defect, but only when the plaintiff can prove the following elements:

> (1) ownership [or control] of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation.[20]

A finding of custodial liability under article 2317.1 and 2322 is "predicated upon a finding of negligence."[21] A custodian's duty is the same as that under the general negligence theory of article 2315.[22]

Defendant Airbnb argues that it is not liable to Plaintiffs for two reasons: a) Defendant Airbnb owed no duty to Plaintiffs because it neither owned nor

---

[16] LA. CIV. CODE art. 2315.
[17] Bufkin v. Felipe's Louisiana, LLC, 171 So. 3d 851, 855 (La. 2014).
[18] Lemann v. Essen Lane Daiquiris, Inc., 923 So. 2d 627, 633 (La. 2006).
[19] *See* McLachlan v. New York Life Ins. Co., 488 F.3d 624, 627 (5th Cir. 2007); *Lemann*, 923 So. 2d at 633.
[20] Broussard v. State ex rel. Office of State Bldgs., 113 So. 3d 175, 182–83 (La. 2013); *see also* LA. CIV. CODE arts. 2317.1, 2322.
[21] Jackson v. Brumfield, 40 So. 3d 1242, 1243 (La. App. 1 Cir. 2010).
[22] Vinccinelli v. Musso, 818 So. 2d 163, 165 (La. App. 1 Cir. 2002).

controlled the Property on which Plaintiff Carroll was injured, and b) Defendant Airbnb had no knowledge of the defective condition of the stairs, foreclosing liability under articles 2317.1 and 2322. Plaintiffs respond by pointing to two sources of duty that they claim Defendant Airbnb owed to them. Plaintiffs argue that Defendant Airbnb had a special relationship with either the Plaintiffs or Owners such that Airbnb had a duty to prevent the Owners from harming third parties like Plaintiffs. And Plaintiffs argue that Defendant Airbnb had sufficient control over the Property so as to become liable under Louisiana Civil Code articles 2317.1 and 2322. Plaintiffs do not specifically respond to the knowledge issue.

I.  **Duty Pursuant to a Special Relationship**

Plaintiffs argue that Defendant Airbnb owed them a duty under article 2315 because a special relationship existed between Airbnb and either Plaintiff Carroll or the Owners, though Plaintiffs are not clear as to which.[23]

Louisiana courts have found that if a defendant has a sufficiently close relationship with a wrongdoer, the defendant may owe a duty to third persons to protect them from harm caused by the wrongdoer.[24] The examples collected in *Louisiana Tort Law*—the only source regarding this type of special relationship that Plaintiffs cite—are limited to parent or guardian over minor child, master over servant, jailer or over his charge, and perhaps a psychiatric hospital over its committed patients.[25] Each of those relationships involves a defendant exerting a degree of control over the other party far exceeding even

---

[23] Doc. 154 at 9–13.
[24] *See* FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., LOUISIANA TORT LAW § 5.07[4] (2004 ed. Supp. 2016). The authors also note that doctors have a duty to warn third parties of danger posed by their patients, but only when the patient has communicated an immediate threat of physical violence to the doctor. Here, Plaintiffs do not allege that Defendant Airbnb had knowledge of the danger the stairs posed.
[25] *See id.*

5

the amount that Plaintiffs allege that Airbnb exercised over the Defendant Owners.[26] At most, Plaintiffs allege that Defendant Airbnb was a "gatekeeper" to the Property, with the right to inspect the property at any time and delist the Property at will.[27] Such a relationship does not involve the direct control, and corresponding responsibility, of the more custodial relationships that have traditionally given rise to a duty to protect third parties. Accordingly, Defendant Airbnb did not owe a duty to Plaintiffs because of any special relationship between Airbnb and the Defendant Owners.

Louisiana courts also look for a special relationship when imposing a duty upon a defendant whose breach was the failure to act at all.[28] In those situations, courts look to the nature of the relationship between the defendant who failed to act and the injured plaintiff. A relationship with "special attributes of trust or confidence," as Plaintiffs state, is generally required to trigger such a duty.[29] The court in *In re FEMA Trailer Formaldehyde Product Liability Litigation* provided a detailed exploration of the Louisiana jurisprudence on this issue.[30] In that case, inhabitants of FEMA trailers sued the companies that FEMA contracted with to install the trailers for breaching a duty to warn the inhabitants of dangerous levels of formaldehyde in the trailers.[31] The court concluded that Louisiana law only imposes a duty to act for the benefit of others, in that case the inhabitants, when there is some special relationship between the plaintiff and defendant.[32] The court noted

---

[26] *See id.*
[27] *See* Doc. 44 at ¶¶ 15–17.
[28] *See* Fox v. Bd. of Sup'rs of La. State Univ. & Agr. & Mech. Coll., 576 So. 2d 978, 981 (La. 1991); *see also* In re FEMA Trailer Formaldehyde Prod. Liab. Litig., 838 F. Supp. 2d 497, 506 (E.D. La. 2012) (gathering cases).
[29] Doc. 154 at 10 (quoting *In re FEMA Trailer Formaldehyde*, 838 F. Supp. 2d at 506).
[30] *See In re FEMA Trailer Formaldehyde*, 838 F. Supp. 2d at 504–11.
[31] *Id.* at 409–503.
[32] *Id.*

6

that a contractual relationship is usually insufficient, and finding even that lacking, held that the contractors owed the inhabitants no duty.[33]

Plaintiffs cite two cases to support their assertion that Plaintiffs and Defendant Airbnb had the special relationship required to trigger a duty to act. In *Fox v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, which tends to support finding no duty, a student from another college who broke his neck at a tournament hosted by the LSU rugby club sued LSU for failing to ensure that the tournament was conducted with adequate safety.[34] The court reasoned that LSU, a separate entity from its rugby club, had no duty to the visiting player because there was no special relationship between the player and LSU.[35]

In *Smith v. Orkin Exterminating Co.*, a homeowner hired the defendant company to provide exterminating services in her home and sued when the defendant's employee sexually assaulted her.[36] The court held that the company had a duty to exercise reasonable care in hiring and retaining the employees that it sent into customers' homes.[37] The court reasoned that while one does not usually owe others a duty to prevent harm by a third party, the defendant company both created the opportunity for the harm to occur and was in the best position to prevent the harm.[38]

Plaintiffs argue that Defendant Airbnb is analogous to the defendant company in *Smith* because Airbnb sends guests into the homes of its hosts.[39] The Court finds this unpersuasive. As an initial matter, *Smith* is a negligent

---

[33] *Id.* at 506–11.
[34] *Fox*, 576 So. 2d at 980.
[35] *Id.* at 981–82.
[36] Smith v. Orkin Exterminating Co., 540 So. 2d 363, 364–65 (La. Ct. 1 App. 1989).
[37] *Id.* at 366–67.
[38] *Id.* (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 33, at 201–03 (5th ed. 1984)).
[39] *See* Doc. 154 at 11.

hiring case, while the case at hand is better viewed through the frame of premises or custodial liability, discussed below.[40] Even so, the relationship between Defendant Airbnb and either the Defendant Owners or Plaintiffs is much weaker than that between the employer and either the employee or customer in *Smith*.[41] Airbnb's Terms of Service specifically disclaim any control over, or responsibility for, the actions of hosts and guests.[42] Instead, they describes Airbnb's role as facilitating a transaction between property owners and guests.[43] Further, while the company in *Smith* actively selected and managed the employee whose acts harmed the plaintiff, Airbnb merely offered a platform on which the Defendant Owners listed the Property.[44] In this way, Defendant Airbnb's role is more like that of LSU in *Fox*, which merely maintained the grounds on which another party staged the tournament at which the plaintiff was injured.

Plaintiffs characterize the relationship between Airbnb and its users differently, but there is no dispute over the underlying facts. In keeping with the characterization of Airbnb's role as a mere intermediary, Plaintiffs state that, "Airbnb provides an online platform that provides property owners, or Hosts, access to Guests, individuals seeking lodging."[45] Plaintiffs also describe how Airbnb allows property owners to create a profile and collects information about their property as part of the listing process.[46] On the other hand, Plaintiffs claim that, "Airbnb must accept a potential Host before the Host is

---

[40] *See Smith*, 540 So. 2d at 366–67.
[41] *See id.*
[42] Doc. 71-10 at 2.
[43] Doc. 71-10 at 2, 3–4. Plaintiffs were not party to the Terms of Service, and so are probably not bound by its terms. However, Plaintiffs only connection to Defendant Airbnb is the rental of the Property conducted pursuant to the Terms of Service, and so the document is relevant to describe the nature of Defendant Airbnb's role in the transaction.
[44] *See* Doc. 71-10 at 3–4; *Smith*, 540 So. 2d at 366–67.
[45] Doc. 154 at 2.
[46] Doc. 154 at 2.

8

allowed to make their property available for rent on Airbnb's website,"[47] and frequently refer to the fact that Airbnb retains the right to remove a listing for any reason.[48] While these acceptance and retention rights are superficially similar to those of the employer in *Smith*, Plaintiffs offer no evidence that Defendant Airbnb actually exercises those rights with anything approaching the care and discernment of a business hiring an employee. Instead, Defendant Airbnb's role is more akin to a real estate agent, who works to connect the parties to a transaction and often facilitates payment. A real estate agent also retains the right to accept and terminate listings, just as Airbnb does. Under Louisiana law, real estate agents have the duty to disclose those defects of which they have knowledge, but no duty to inspect the properties they advertise.[49]

Furthermore, unlike the company in *Smith*, Defendant Airbnb was not in the best position to prevent the harm that occurred. Airbnb had no right to inspect the Property before the incident and no right to authorize repairs.[50] Exclusive control of the property remained with the Defendant Owners, and thus they were in the best position to mitigate the risk posed by a defective staircase.

Accordingly, Defendant Airbnb did not owe Plaintiffs a duty because of a special relationship between Plaintiffs and Airbnb. Having found above that no relationship between Airbnb and Defendant Owners imposed a duty on Airbnb, this Court concludes that Airbnb had no duty pursuant to the general

---

[47] Doc. 154 at 2.
[48] Doc. 154 at 3–5.
[49] *See, e.g.*, Waddles v. LaCour, 950 So. 2d 937, 942 (La. App. 3 Cir. 2007) ("[T]he duty to disclose any material defects extends only to those defects of which the broker or agent is aware."); Reeves v. Weber, 509 So. 2d 158, 160 (La. App. 1 Cir. 1987).
[50] Plaintiffs cite no evidence to support any assertion to the contrary.

negligence principles of article 2315 to protect Plaintiffs from the harm they suffered.

## II. Duty Arising From Custody or Garde

Plaintiffs also assert that Defendant Airbnb owed them a duty because of the custody or control over the Property that Airbnb retained. The duty of a custodian of a building under articles 2317.1 and 2322 is to "keep [it] in a reasonably safe condition[, and to] discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence."[51] Defendant Airbnb argues that it does not owe that duty to Plaintiffs because it lacked custody, or garde, over the Property. While ownership of a thing is usually sufficient to establish garde, the principle of imposing liability on the entity best able to mitigate risk is broader than ownership alone and thus more than one party may have garde.[52] To determine whether a person has garde over a thing, courts look to "(1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing."[53]

Plaintiffs cannot establish that Defendant Airbnb had garde over the Property because they fail to identify a dispute of material fact as to whether Defendant Airbnb had a right of direction and control over it.

> In determining whether a party has a legal relationship with a thing so as to have the right of direction and control over it, courts have looked to a variety of factors, including whether the party has the right to use, alienate, encumber, or lease the thing, or otherwise grant a right of use to others[, *see Doughty*, 576 So. 2d at 464–65; Smith v. State of Louisiana, 620 So. 2d 1172, 1183–84 (La. Ct. App. 1st Cir. 1992)]; whether the party has the right to authorize alterations or repairs to the thing[, Butler v. Re/Max

---

[51] *Vinccinelli*, 818 So. 2d at 165.
[52] *See* Dupree v. City of New Orleans, 765 So. 2d 1002, 1009 (La. 2000); Doughty v. Insured Lloyds Ins. Co., 576 So. 2d 461, 464 (La. 1991).
[53] *Dupree*, 765 So. 2d at 1009.

New Orleans Props., Inc., 828 So. 2d 43 (La. Ct. App. 4th Cir. 2002)], and whether the party has an unfettered right to access the thing at will, versus only a limited access to enter[, *see* Bethea v. Great Atlantic & Pacific Tea Co., 22 So. 3d 1114, 1116 (La. Ct. App. 4th Cir. 2009)].[54]

Plaintiffs make a variety of factual claims about the nature of the relationship between Defendant Airbnb and the Property, some of which are irrelevant to the issue of garde and some of which lack evidentiary support. Plaintiffs argue that Defendant Airbnb is the "gatekeeper" to the Property, asserting that Airbnb is the "only way" that they gained access to the Property and that Plaintiff Carroll would not have been at the Property had it not been listed with Airbnb.[55] Plaintiffs have shown that Airbnb was the only way Carroll *did* access the Property, but have not shown that it was the only way anyone *could have* done so. In other words, Plaintiff cite to no evidence that the right of Defendant Owners to grant access to their Property to whomever they like was in any way inhibited by their contract with Airbnb. Similarly, though Plaintiffs state that "Airbnb has the sole discretion to allow guests' access to the hosts' properties," Plaintiffs do not provide evidence that Airbnb had the right to prevent the Defendant Owners from granting access to anyone they please.[56]

Plaintiffs also repeatedly assert that Airbnb had the right to inspect the Property.[57] However, the only evidence Plaintiffs cite to support that claim is the Airbnb Terms of Service and the deposition of Airbnb's corporate representative. The Terms of Service, in setting forth the conditions that an Airbnb host must fulfill in order to take advantage of insurance provided by

---

[54] *In re FEMA Trailer Formaldehyde*, 838 F. Supp. 2d at 512 (footnotes inserted inline).
[55] Doc. 154 at 14.
[56] Doc. 154 at 14
[57] *See* Doc. 154 at 11 ("Airbnb can inspect properties for safety related concerns in its sole discretion."), 14 ("Airbnb has the right to inspect or not inspect the property. . . .").

11

Defendant Airbnb, states, "You must permit Airbnb or the designee(s) of Airbnb's insurer to make inspections of Covered Property at all reasonable times."[58] Airbnb's corporate representative clarified that this right was to inspect "the damaged property or the property in question . . . not general inspection of the entire property," and only existed after an incident occurred.[59] Plaintiffs point to no evidence suggesting that Defendant Airbnb had the general right to inspect the Property before the incident in question, and conceded so at oral argument.

Plaintiffs list a variety of additional rights that Defendant Airbnb maintained—including the right to remove the Property's listing from its website at will, to require repairs after an accident before re-listing the Property, and the right to conduct background checks of Defendant Owners—none of which bear on whether Airbnb had garde over the Property itself. Plaintiffs summarized their argument as, "control of the platform is control of the property."[60] This Court disagrees. Returning to the factors of whether garde exists as summarized in *In re FEMA Trailer*, Plaintiffs produce no evidence that Airbnb retained the right to alienate the Property, to authorize repairs, or to access the Property at will.[61] Rather, Defendant Airbnb was situated more like a travel agent, facilitating a transaction between the Defendant Owners and guests. Travel agents do not have garde over the hotels they book for their customers, just as they do not have a general duty under article 2315 to protect their customers from harm caused by those hotels.[62]

---

[58] Doc. 71-7 at 42.
[59] Doc. 154-2 at 11.
[60] Oral Argument, Dec. 6, 2017.
[61] *See In re FEMA Trailer Formaldehyde*, 838 F. Supp. 2d at 512.
[62] *See* Butler v. Re/max New Orleans Properties, Inc., 828 So. 2d 43, 47 (La. App. 4 Cir. 2002) (holding that a real estate agent with keys to a property and instructions to sell it did not have garde over the property); Pierre v. Am.-Int'l Travel, Inc., 717 F. Supp. 435, 435–37

## III. Notice or Constructive Notice of the Defect

Even if Defendant Airbnb did have garde over the Property, Plaintiffs have produced no evidence that Airbnb knew or should have known of the defect in the stairs, as required by article 2322. In order to recover under a theory of custodial liability, "a plaintiff must prove that the defendant had actual or constructive knowledge of the vice or defect. Constructive knowledge 'imposes a reasonable duty to discover apparent defects in things under the defendant's garde.'"[63] "Constructive notice is the existence of facts which imply actual knowledge. . . . To establish constructive notice, plaintiff must prove that the defect causing the injury existed over a sufficient length of time to establish that reasonable diligence would have led to its discovery and repair."[64]

Plaintiffs do not dispute that Defendant Airbnb had no actual knowledge of any defect in the stairs, and they also fail to cite any evidence that Defendant Airbnb should have known of the condition of the stairs. There is no evidence of the length of time that the alleged defect in the stairs existed, that an inspection would have revealed the condition of the stairs, or that any party had any suspicion that the stairs were dangerous. Accordingly, Plaintiffs have failed to carry their burden at this summary judgment stage on the issue of knowledge.[65]

---

(M.D. La. 1989) (holding that, under Louisiana law, a travel agent did not have a duty to protect its customer travelers from the negligence of the airline or airport).

[63] Daniel v. Clarion Inn & Suites, 214 So. 3d 38, 41 (La. App. 4 Cir. 2017) (quoting Tsegaye v. City of New Orleans, 183 So. 3d 705, 718 (La. App. 4 Cir. 2015)).

[64] Flenner v. Sewerage & Water Bd. of New Orleans, 110 So. 3d 661, 665 (La. App. 4 Cir. 2013); *see also* Dronette v. Shelter Ins. Co., 998 So. 2d 942, 945 (La. App. 3 Cir. 2008).

[65] *See also* Ukudi v. McMoran Oil & Gas, L.L.C., 587 F. App'x 119, 122 (5th Cir. 2014) (upholding summary judgment on liability under article 2322 when plaintiff merely asserted that defendants should have known about a defect, but produced no evidence as to why); Duplantis v. Cadillac Fairview Shopping Ctr. Properties (La.), Inc., 894 So. 2d 393, 398 (La. App. 5 Cir. 2005) (rejecting plaintiff's argument that defendant mall owners

## **CONCLUSION**

Plaintiffs fail to establish a dispute over a fact material to the question of whether Defendant Airbnb owed a duty to Plaintiffs under either the general negligence obligations of article 2315 or the obligations associated with custody of a thing under articles 2317.1 and 2322. Plaintiffs further fail to cite to any evidence suggesting that Defendant Airbnb knew or should have known of the condition of the stairs, as required by article 2322. Because the Court finds that Defendant Airbnb owed no duty to Plaintiffs and had no actual or constructive knowledge of any defect in the stairs, Defendant Airbnb's Motion for Summary Judgment is GRANTED and Plaintiffs' claims against it are DISMISSED with prejudice.

New Orleans, Louisiana this 21st day of December, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

should have periodically inspected a handrail and holding that there was no evidence defendants should have known of a defect in it).